| United States of America | : | |
|---|---|---|
| | : | |
| v. | : | Case No. 1:24-CR-311-ELH |
| | : | |
| James Howeth, | : | |
| | : | |
| Defendant. | : | |

## MOTION TO SUPPRESS STATEMENTS

James Howeth, by and through undersigned counsel, hereby moves this Honorable Court pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure to suppress any and all statements, admissions, and confessions ("statements") that were allegedly made by Mr. Howeth on March 14, 2024 during the execution of the search warrant at his residence, on May 6, 2024 during the Department of Social Services' (DSS) investigation, and on October 8, 2024, during the execution of the search warrant for his person, which the government proposes to use as evidence at trial.

## Background

### A. Mr. Howeth's statements on March 14, 2024.

On March 14, 2024, multiple officers executed a search warrant at Mr. Howeth's residence at 5:35 am in the morning. Officers directed Mr. Howeth, who sat at the kitchen table with the rest of his family as the officers searched the residence, go upstairs to put on clothes and then talk to officers outside of the residence in their vehicle. Mr. Howeth was then escorted to his bedroom to retrieve clothing before being escorted out of his home and into the squad car. He sat in the passenger seat of the squad car as one officer sat in the driver's seat, and another

officer sat directly behind him. While inside the police vehicle, the officers interrogated Mr. Howeth.

That same day, Mr. Howeth was taken into custody at the Dorchester County Detention Center ("DCDC"). He was charged with possession of child pornography, distribution of child pornography, and sexual abuse of a minor. *See* Exhibit A (Dorchester County District Court Statement of Charges). On March 29, 2024, Assistant Public Defender Kyle Grusholt entered his appearance on behalf of Mr. Howeth. *See* Exhibit B (Kyle Grusholt Notice of Appearance). Mr. Howeth was ordered detained at the DCDC pending trial on the State charges.

**B. Mr. Howeth's statements on May 6, 2024.**

On May 6, 2024, Erin Mabry, a DSS employee and licensed social worker, interrogated Mr. Howeth while he still detained at the DCDC regarding the allegations stemming from his arrest. At the time of the interrogation, Mr. Howeth had already been formally charged in Dorchester County and was represented by an attorney in the case. During his interrogation, Ms. Mabry did not provide Mr. Howeth with *Miranda* warnings, and she did not notify his counsel prior to questioning him. Consistent with her obligations under the Maryland Code of Regulations, Ms. Mabry provided the Dorchester County States Attorney with a written report documenting her sexual abuse investigation, which included Mr. Howeth's interrogation. *See* Exhibit C (Dorchester County Department of Social Services Sexual Abuse Investigation Summary Report).

**C. Mr. Howeth's statements on October 8, 2024.**

On October 8, 2024, Agents Jeffrey Yesensky and Grace Meyer executed a search warrant for Mr. Howeth's person at the DCDC. According to the agents, the search warrant was executed in a secured room: there were no cameras, the only window was covered up, and it was just Mr. Howeth, a DCDC Lieutenant officer, and the agents. *See* Exhibit D (Meyer, Ysensky SW Execution Memo). In direct response to the agents' statements and actions during the execution of the search warrant, Mr. Howeth allegedly made a statement. Prior to making that statement, Mr. Howeth was not provided with *Miranda* warnings.

**Argument**

I.      **Mr. Howeth's Statements to Law Enforcement Officers on March 14, 2024, were Involuntary and Obtained in Violation of *Miranda*.**

**A. Mr. Howeth's statements were involuntary.**

Statements that are obtained involuntarily under the Fifth Amendment's Due Process Clause are inadmissible and subject to suppression. *See Braxton v. United States*, 112 F.3d 777, 780 (4th Cir. 1997). To determine whether a statement is voluntary, the court consider "'whether the defendant's will has been 'overborne' or 'his capacity for self-determination critically impaired.'" *Id.* (quoting *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) and *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). In making this determination, "courts must consider 'the "totality of the circumstances," including the characteristics of the defendant, the setting of the interview, and the details of the interrogation.'" *Id.* (quoting *Pelton*, 835 F.2d at 1071, and *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir. 1980)).

3

Where a statement is coerced, and thus involuntary, the statement and any evidence derived from the statement must be suppressed. *United States v. Patane*, 542 U.S. 630, 640 (2004) ("We have repeatedly explained 'that those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial.'")."The Government bears the burden of proving by a preponderance of the evidence that the statement was voluntary." *Braxton*, 112 F.3d at 781.

Mr. Howeth made involuntary statements to law enforcement officers prior to his arrest on the day of the search warrant execution at his residence. In the early morning hours of March 14, 2024, a task force of police officers descended upon Mr. Howeth's home. After gaining entry, several officers entered the home and corralled all of his family members into the kitchen, where they sat as other officers searched the premises. All the officers were armed and uniformed and equipped with tactical vests. Several minutes into the execution of the search warrant, the Sergeant walks back into the kitchen and tells Mr. Howeth should go upstairs, grab some clothes, and talk with the officers. Mr. Howeth is then escorted by two officers to his bedroom to get dressed, as three other officers were already present in his room. While upstairs, he grabs a shirt, a pair of pants, some socks, and a pair of shoes, and uses the restroom all in the presence of several officers. He is then escorted by the Sergeant and another officer to the squad car outside. The rest of the officers remained in his home, with his family seated around the kitchen table.

Mr. Howeth, a first-time participant in criminal proceedings of any kind, sat in the passenger seat of the squad car, after having been separated from his family and escorted out of his house where the only illumination came from the streetlights. The Sergeant sat in the driver's seat and another officer sat directly behind Mr. Howeth, where he was ultimately interrogated. These facts, in addition to those that will be established at the evidentiary hearing, demonstrate that Mr. Howeth's will was "overborne" and his "capacity for self-determination was critically impaired," *Pelton*, 835 F.2d at 1071, rendering any statements or waiver involuntary.

### B. Mr. Howeth's statements were not obtained pursuant to a valid *Miranda* waiver.

Additionally, Mr. Howeth's statements on March 14, 2024, were obtained in violation of *Miranda.* Confessions made during custodial interrogations will be suppressed unless police, or their functional equivalents, "advise the defendant of his rights under *Miranda . . .* and the defendant knowingly, intelligently, and voluntary waives those rights." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017) (quoting *United States v. Holmes*, 670 F.3d 586, 591 (4th Cir. 2012)), *see also United States v. Kimbrough*, 477 F.3d 144, 147. In deciding whether a defendant was in custody for *Miranda* purposes, courts ask whether, "under the totality of the circumstances, 'a suspect's freedom of action [was] curtailed to a degree associated with formal arrest.'" *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013) (quoting *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001)). Ultimately, the inquiry is an objective one that focuses on whether a "reasonable person in the

suspect's position" would have understood that he "was not at liberty to terminate the interrogation and leave." *Hashime*, 734 F.3d at 282 (quoting *United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007), and *United States v. Jamison*, 509 F.3d 628 (4th Cir. 2007)). "Facts relevant to the custodial inquiry include, but are not limited to, 'the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant.'" *Giddins*, 858 F.3d at 879 (quoting *Hashime*, 734 F.3d at 283).

If an accused person is deemed to have been "in custody" for *Miranda* purposes, the inquiry then turns to whether the person was subject to interrogation. An "interrogation" refers "not only to express questioning, but also to any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response form the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). An "incriminating response" includes any response – whether inculpatory or exculpatory – that the prosecution may seek to introduce at trial. *Id*. at n. 5.

Statements obtained from a defendant during custodial interrogation must be suppressed unless the government can prove, by a preponderance of the evidence, that law enforcement officers adequately informed the defendant of his *Miranda* rights and obtained a knowing and voluntary waiver of those rights. *Miranda v. Arizona*, 84 U.S. 463, 476-79 (1966); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

6

Here, Mr. Howeth made statements after being woken up from his sleep, separated from the rest of his family, and escorted by several armed, uniformed officers upstairs to get clothes, to restroom, and outside into a police vehicle. It was still dark outside. The Sergeant had to use the overhead cabin light in the squad car. Mr. Howeth sat in the passenger seat, within arm's reach of the Sergeant, as another office sat directly behind him. These circumstances, including those that will be established at the evidentiary hearing, demonstrate that Mr. Howeth was in custody for the purposes of *Miranda*. At that juncture, a reasonable person in the Mr. Howeth's position would have understood that he "was not at liberty to terminate the interrogation and leave." *Hashime*, 734 F.3d at 282.

Additionally, the officers' questions during the interrogation were reasonably likely to elicit an incriminating response. Indeed, officers cited to some of Mr. Howeth's incriminating statements in his State charging documents, and when applying for a warrant to search electronic devices recovered from his home. *See* Ex. A; *see also* (Motion to Suppress and Request for a Franks Motion, Exhibit J Search Warrant for Electronic Devices 3-19-2024). For the reasons outlined above, in addition to the facts that will be established at the evidentiary hearing, the Government cannot meet its burden of proving that Mr. Howeth's statements were obtained pursuant to a valid *Miranda* waiver.

## II. Mr. Howeth was Interrogated by Ms. Mabry, a DSS Social Worker, Afoul of His Fifth and Sixth Amendment Rights

### A. Ms. Mabry violated Mr. Howeth's *Miranda* rights.

Mr. Howeth's statements to DSS Social Worker Erin Marby should be suppressed for two primary reasons. First, Mr. Howeth's statements were obtained in violation of his Fifth Amendment rights under *Miranda*. Ms. Mabry subjected Mr. Howeth to a custodial interrogation. According to Ms. Mabry, the interrogation took place while he was detained at the DCDC. *See* Def. Exh. C. Mr. Howeth was brought from his cell to a secured visiting booth, where Ms. Mabry awaited him. The two were confined in a small space during the course of the interrogation. At the conclusion, Mr. Howeth was brought back to his cell by DCDC personnel. Indeed, under the totality of the circumstances, Mr. Howeth's "freedom of action [was] curtailed to a degree associated with a formal arrest." *Hashime*, 734 F.3d at 282.

Moreover, Ms. Mabry's questions to Mr. Howeth were reasonably likely to elicit an incriminating response. *See Rhode Island*, 446 U.S. at 300-01. Indeed, her questions were directly linked to the criminal charges then pending against him. Prior to engaging in this custodial interrogation, Ms. Mabry was required to advise Mr. Howeth of his *Miranda* rights. She failed to do so. As a result of this *Miranda* violation, Mr. Howeth's statements must be suppressed.

**B. Ms. Mabry violated Mr. Howeth's Sixth Amendment rights**

Second, the statements were obtained in violation of Mr. Howeth's Sixth Amendment right to counsel. The Sixth Amendment provides that an "accused shall . . . have the assistance of counsel for his defense." U.S. Const. amend. VI. The right to counsel is triggered "at or after the time that judicial proceedings have been

initiated," *Fellers v. United States*, 540 U.S. 519, 523 (2004) (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1977)), and applies at all "critical stages" of the criminal proceedings, *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). "[A]n accused is denied the basic protections of the Sixth Amendment when there is used against him at his trial evidence of his own incriminating words, which agents . . . deliberately elicited from him after he had been indicted and in the absence of his counsel." *Id.* (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)) (brackets omitted). Sixth Amendment protections apply not just where there is explicit questioning, but also where law enforcement "takes some action . . . that was designed deliberately to elicit incriminating remarks." *See Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986) ("[B]ecause of the relationship between the defendant and the informant, the informant's engaging the defendant 'in active conversation about their upcoming trial was certain to elicit' incriminating statements from the defendant. Thus the informant's participation in this conversation was the functional equivalent of interrogation." (internal quotation marks omitted)). At the time of this interrogation, Mr. Howeth had already been formally charged and counsel had entered their appearance on his behalf. *See* Def. Exh. A; *see also* Def. Exh. B. Surely, this was "after the time that judicial proceedings ha[d] been initiated." *Fellers* 540 U.S. at 523. Mr. Howeth was not afforded the opportunity to consult with or have counsel present prior to Ms. Mabry's interrogation.

Furthermore, Ms. Mabry, in her capacity as a DSS worker, was a functional equivalent of the police when she interrogated Mr. Howeth at the DCDC. *See*

*United States v. Elie, 111 F.3d 1135* (4th Cir. 1997) (finding that the defendant had a Fifth Amendment right to silence and a Sixth Amendment right to counsel where he made statements while in the custody of non-federal authorities, namely State Department Diplomatic Security Service agents). DSS is a State of Maryland governmental agency. Accordingly, the operating procedures for DSS are outlined extensively within the Code of Maryland Regulations, particularly, Title 7, Subtitle 2. COMAR 07.02.07. In particular, subsection (G) provides that: "[t]he local department or, if warranted, law enforcement shall notify the State's Attorney's office of any preliminary findings in a child abuse investigation. Indeed, the content of Ms. Mabry's interrogation explicitly referenced the subject of the charges brought against Mr. Howeth and was certain to "elicit incriminating statements" from him. The interrogation amounted to a finding of suspected child abuse. This finding was directed to the State's Attorney's office on May 13, 2024, within the time window specified by statute. *See* Def. Exhibit C.

Ms. Mabry interrogated Mr. Howeth while he was in custody and failed to provide him with *Miranda* warnings. Additionally, Ms. Mabry interrogated Mr. Howeth outside of the presence of his court-appointed counsel. For these reasons, Mr. Howeth's statements were obtained in violation of his Fifth and Sixth amendment rights. Suppression is warranted.

III. **Agent Yesensky's and Agent Meyer's Statements and Actions During the Execution of a Search Warrant Amounted to a Custodial Interrogation, in Violation of Mr. Howeth's Fifth and Sixth Amendment Rights.**

Much like the Mr. Howeth's statements to Ms. Mabry, Mr. Howeth's statements to Agent Yesensky and Agent Meyers on October 8, 2024, was made in violation of *Miranda* and his Sixth Amendment right to counsel.

**A. Agent Yesensky and Agent Meyer violated Mr. Howeth's *Miranda* rights.**

Mr. Howeth's statement to Agent Yesensky and Agent Meyer on October 8, 2024, was made in direct response to a custodial interrogation. Because the agents did not advise Mr. Howeth of his *Miranda* rights prior to his statement, suppression is warranted.

As a threshold matter, there can be no dispute that Mr. Howeth was "in custody" at the time of the alleged statements. He was in custody at the DCDC and was brought to a secure room by DCDC personnel, where Agent Yesensky and Agent Meyer executed the search warrant. Ex. B. The room did not have any cameras and the only window into the room was completely covered. Under these circumstances, Mr. Howeth's freedom of movement was restrained "to a degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994). As such, he was in custody for purposes of *Miranda*.

Second, Mr. Howeth was interrogated by Agent Ysensky and Agent Meyer without first being advised of his *Miranda* rights. In *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), the Supreme Court defined the term "interrogation" as referring to "any words or *actions* on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301 (emphasis added);

11

*see also United States v. Blake*, 571 F.3d 331, 338-39 (4th Cir. 2009). An "incriminating response" includes any response – whether inculpatory or exculpatory – that the prosecution may seek to introduce at trial. *Rhode Islnad,* 446 U.S. at 301, n. 5. Here, the agents came to the DCDC, months after Mr. Howeth's arrest, in an unfamiliar, separate room at the jail, in which the only window was covered up. The combination of their words and actions, particularly to an unsophisticated participant in the criminal legal system like Mr. Howeth, would be reasonably likely to elicit an incriminating response. And prior to making a statement, Mr. Howeth was not given a *Miranda* warning. As a result, the statement should be suppressed.

**B. Agent Yesenksy and Agent Meyer violated Mr. Howeth's Sixth Amendment rights.**

Additionally, this interrogation also violated Mr. Howeth's Sixth Amendment right to counsel. This interrogation took place over six months after Mr. Howeth was formally charged in the State, in the absence of counsel representing Mr. Howeth for nearly the same time span. *See* Def. Exh. A; *see also* Def. Exh. B. Still, according to the agents, Mr. Howeth was only informed of his right to have counsel present *after* allegedly making a statement in direct response to their words and actions. *See* Def. Exh, D. For these reasons, Mr. Howeth's statement was obtained in violation of his Sixth Amendment rights. As a result, suppression is warranted.

<u>Conclusion</u>

Mr. Howeth is entitled to a hearing regarding the voluntariness of any statements, whether oral or written, that the government attributes to him. *See*

*United States v. Inman, 352 F.2d 954 (4th Cir. 1965); see also* 18 U.S.C. § 3501(a)

("In any criminal prosecution brought by the United States . . . a confession, as

defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily

given. Before such confession is received in evidence, the trial judge shall, out of the

presence of the jury, determine any issue as to voluntariness."). At the hearing, it is

the Government who bears the burden of establishing by a preponderance of the

evidence that the statement was voluntary. *Giddins*, 858 F.3d at 881. Indeed, if at

such hearing, the government fails to establish that Mr. Howeth's statements were

not obtained in violation of his privilege against self-incrimination nor his right to

counsel, as guaranteed by the Fifth and Sixth Amendments to the United States

Constitution, nor the Supreme Court's holdings in *Miranda v. Arizona*, 384 U.S. 436

(1966), and were not otherwise involuntary, *see Mincey v. Arizona*, 437 U.S. 385

(1978); *McNabb v. United States*, 318 U.S. 332 (1943), such statements should be

suppressed.

Pursuant to Rule 105.6 of the Local Rules of the United States District Court

for the District of Maryland, Mr. Howeth hereby requests a hearing on this Motion

and reserves the right to raise further arguments and issues that become apparent

through subsequent filings and at the hearing.

For the reasons stated herein and any that become evident in the future, Mr.

Howeth urges the Court to suppress all statements that he allegedly made on

March 14, 2024, May 6, 2024, and October 8, 2024, which the government proposes

to use as evidence at trial.

13

Respectfully submitted,

James Wyda
Federal Public Defender
  for the District of Maryland

___/s/_____
Marquise Findley-Smith
Francisco A. Carriedo (#816158)
Assistant Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland  21201
Phone: (410) 962-3962
Fax:  (410) 962-0872
Email: Marquise_Findley-Smith@fd.org
      Francisco_Carriedo@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, a copy of the foregoing was served via email to the Government.

_____/s/_____
Francisco A. Carriedo